IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **ANDERS ELLIS BJORGUNG,** | : | |
| | : | Civil Action No. 1:03-CV-2114 |
| **Plaintiff** | : | |
| | : | (Chief Judge Kane) |
| v. | : | |
| | : | |
| **WHITETAIL RESORT, WHITETAIL** | : | |
| **SKI COMPANY, INC., U.S.** | : | |
| **SKI & SNOWBOARD ASSOCIATION,** | : | |
| | : | |
| **Defendants,** | : | |
| | : | |
| v. | : | |
| | : | |
| **ANDERS BJORGUNG,** | : | |
| | : | |
| **Third-Party Defendant** | : | |

## MEMORANDUM

Before the Court are Third-Party Defendant's motion for summary judgment (Doc. No. 92), Defendants' first motion for summary judgment (Doc. No. 95), Defendants Whitetail Resort and Whitetail Ski Company, Inc.'s motion for summary judgment (Doc. No. 99), Defendants' second motion for summary judgment (Doc. No. 102), Magistrate Judge Smyser's Report and Recommendation (Doc. No. 128), and the objections of Plaintiff and Third-Party Defendant thereto (Doc. Nos. 130, 132).  Upon a de novo review of the record and Magistrate Judge Smyser's Report and Recommendation, including a careful review of the parties' objections thereto, the Court finds that the Report and Recommendation should be adopted in its entirety. Accordingly, Defendants Whitetail Resort and Whitetail Ski Company, Inc.'s motion for summary judgment and Defendants' first motion for summary judgment will be granted and Defendants' second motion for summary judgment and Third-Party Defendant's motion for

summary judgment will be denied as moot.

I.   **BACKGROUND AND PROCEDURAL HISTORY**

In the interest of economy, the Court shall incorporate by reference the background and procedural history of this case as presented in the Report and Recommendation (Doc. No. 128, at 1-5) and proceed to address each of Magistrate Judge Smyser's recommendations in turn, responding to the parties' objections as necessary.

II.   **STANDARD OF REVIEW**

Pursuant to 28 U.S.C. § 636(b)(1)(C), "[a] judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made.  A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." Id.

Federal Rule of Civil Procedure 56 provides that summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56; see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-51 (1986).  When deciding a motion for summary judgment, the Court views the facts in the light most favorable to the nonmoving party, who is "entitled to every reasonable inference that can be drawn from the record." Merkle v. Upper Dublin Sch. Dist., 211 F.3d 782, 788 (3d Cir. 2000).  However, the nonmoving party may not simply sit back and rest on the allegations in his complaint; instead, he must "go beyond the pleadings and by [his] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial."

Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986) (internal quotations omitted).

With respect to the sufficiency of the evidence that the nonmoving party must provide, a court should grant summary judgment where the nonmovant's evidence is merely colorable, conclusory, or speculative. Anderson, 477 U.S. at 249-50. There must be more than a scintilla of evidence supporting the nonmoving party and more than some metaphysical doubt as to the material facts. Id. at 252; Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). Summary judgment is appropriate if, after adequate time for discovery, the nonmovant fails to make a showing sufficient to establish the existence of an element essential to his case upon which he will bear the burden of proof at trial. Celotex, 477 U.S. at 322-23.

## III. DISCUSSION

### A. Defendants Whitetail Resort and Whitetail Ski Company, Inc.'s Motion for Summary Judgment (Doc. No. 99)

In his Report and Recommendation, Magistrate Judge Smyser concluded that Defendants Whitetail Resort and Whitetail Ski Company, Inc. ("Whitetail") are entitled to summary judgment because they neither owned nor operated the Whitetail ski area ("Ski Area") at the time of Plaintiff's injury. (Doc. No. 128, at 9.) Plaintiff objects, arguing that, pursuant to Federal Rule of Civil Procedure 15, he is "entitled to amend his complaint because his failure to identify the proper Defendant resulted from a reasonable mistake concerning the identity of the proper party." (Doc. No. 132, at 5; Pl.'s Mem. 3.) According to Plaintiff, this "alleged misnomer" stemmed from Whitetail's failure to notify as "required by law the State Corporations office of any change of registered office for purpose of service of process."[1] (Id.) "The service of

---

[1] The "State Corporations office" is properly referred to as the Pennsylvania Department of State's Corporation Bureau.

process," Plaintiff contends, "was proper." (Id.)

Federal Rule of Civil Procedure 15(a) provides that leave to amend "shall be freely given when justice so requires." Fed. R. Civ. P. 15(a). The decision to grant or deny leave is, however, entirely within the discretion of the court. Foman v. Davis, 371 U.S. 178, 182 (1962). The Supreme Court has counseled that leave should be denied in the presence of "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc." Id.; see also Saini v. Bloomsburg Univ. Faculty, 826 F. Supp. 882, 889 (M.D. Pa. 1993). Thus, "when a party fails to take advantage of the opportunity to amend, without adequate explanation, leave to amend is properly denied." Arthur v. Maersk, Inc., 434 F.3d 196, 204 (3d Cir. 2006) (citations omitted).

Denying a motion to amend for reason of undue delay is not at all uncommon among the courts of the Third Circuit. See, e.g., USX Corp. v. Barnhart, 395 F.3d 161, 169 (3d Cir. 2004) (delay of three years); Cureton v. NCAA, 252 F.3d 267, 273 (3d Cir. 2001) (same); Lorenz v. CSX Corp., 1 F.3d 1406, 1414 (3d Cir. 1993) (same); Albee Homes, Inc. v. Litman, 406 F.2d 11 (3d Cir. 1969) (same); L.D. Schreiber Cheese Co. v. Clearfield Cheese Co., 495 F. Supp. 313 (D. Ct. Pa. 1980) (delay of two and one-half years); Meyers v. Schuylkill County Prison, No. 04-1123, 2006 WL 1094550, at *1 (M.D. Pa. April 25, 2006) (delay of twenty-two months). Nevertheless, there is no presumptive period during which such a motion is considered "timely" or after which delay becomes "undue." Arthur v. Maersk, Inc., 434 F.3d at 205. Courts are therefore obligated to "articulate the imposition or prejudice caused by the delay, and to balance those concerns against the movant's reason for delay in asserting the motion." Coventry v. U.S.

Steel Corp., 856 F.2d 514, 520 (3d Cir. 1988) (citing Adams v. Gould, Inc., 739 F.2d 858, 868-69 (3d Cir. 1984)).

As a preliminary matter, the Court notes that the question of whether Whitetail was legally bound to notify the Corporation Bureau of "any change of registered office" is entirely irrelevant. While it is true that, under Pennsylvania law, a foreign limited partnership such as Whitetail Resort is required to amend its certificate of limited partnership to reflect a change in the location of its registered office, it would be remiss to assume, as Plaintiff obviously did, that a limited partnership's registered office will necessarily suffice as the proper location for service of process.[2] A limited partnership's registered office is meant to serve just one purpose: to establish venue in a personal action. As the committee comment to the Revised Uniform Act on registered offices explains, "the registered office location survives only for venue purposes under Pa. R.C.P. No. 2179(a)(1). . . . It is not intended that a bare registered office necessarily constitutes the type of operating office contemplated by Pa. R.C.P. No. 2180(a)(2) for purposes of service of process."[3] 15 Pa. Cons. Stat. Ann. § 8506 (Comm. Cmt. 1988). Furthermore, there is no evidence to suggest that, notwithstanding the sale of the Ski Area, Whitetail Resort no longer regards 13805 Blairs Valley Road, Mercersburg, Pennsylvania as its registered office.

---

[2] Federal Rule of Civil Procedure 4 provides that service shall be effected upon a corporation or association within a judicial district "pursuant to the law of the state in which the district court is located, or in which service is effected. . . . or by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or to any other agent authorized by appointment or by law to receive service of process and, if the agent is one authorized by statute to receive service and the statute so requires, by also mailing a copy to the defendant." Fed. R. Civ. P. 4(e)(1), (h)(1).

[3] Pennsylvania Rule of Civil Procedure 2180 was rescinded June 20, 1985 and replaced by Rule 424, effective Jan. 1, 1986.

After all, a registered office and a place of business need not be one in the same, <u>Fisher v. Kemble Park, Inc.</u>, 142 A.2d 353, 354 (Pa. Super. Ct. 1958), and Whitetail's very presence in this action strongly suggests that process was in fact effected at the aforementioned address.[4]

 Contrary to Plaintiff's sweeping contention, service of process was "proper" only in the sense that it was properly effected upon Defendants Whitetail Resort and Whitetail Ski Company, Inc., neither of which owned or operated the Ski Area at the time of Plaintiff's injury. In explaining his mistake, Plaintiff charges that Snow Time, Inc., "the proper Defendant," "continued to operate as Whitetail Resort after the private purchase of the ski area from Defendants Whitetail," the insinuation being that this was somehow improper. (Doc. No. 132, at 5-6; Pl.'s Mem. 3-4.) That Snow Time would operate as Whitetail Resort once it owned the Ski Area hardly strikes the Court as surprising or, for that matter, unorthodox. (Doc. No. 132, at 5; Pl.'s Mem. 3.) Indeed, an examination of the purchase and sale agreement for the Ski Area, executed by Whitetail and Snow Time on September 29, 1999, reveals that "the name Whitetail, Whitetail Ski Resort or any derivation thereof" were among those assets conveyed to the purchaser. (Doc. No. 99-2, at 8; Defs.' Mot. for Summ. J. Ex. A4.) On a related point, Plaintiff has yet to adduce even the slightest evidence to show that Snow Time continued to use the name "Whitetail Resort, LP" rather than "Whitetail Resort," as alleged in his objection. (<u>Id.</u>)

 Finally, notwithstanding the fact that Plaintiff entered into a "Whitetail Event, Competition & Release Agreement" identifying "WHITETAIL MOUNTAIN OPERATING CORP." as a releasee—an object of considerable attention in this suit—Plaintiff chose to name

---

[4] Indeed, Whitetail denied that Whitetail Ski Company then had its "principal place of business" at the Blairs Valley Road address in its answer to Plaintiff's complaint. (Doc. No. 5, at 1; Def.'s Compl. 1.)

Whitetail Ski Company, Inc., instead of the former entity, as a defendant.  (Doc. No. 5, at 5; Defs.' Answer Ex. A) (uppercase in original).  Most remarkable, however, is the fact that Whitetail alerted Plaintiff to his mistake *more than three and one-half years ago*.  In their answer filed January 20, 2004, Whitetail not only denied that they owned or operated the Ski Area at the time of Plaintiff's injury, but identified Snow Time and Whitetail Mountain Operating Corp. as the proper defendants and provided the principal place of business for each of them.  (Doc. No. 5, at 1-2; Defs.' Answer 1-2.)  Despite such efforts, Plaintiff waited until filing his brief in opposition to the instant motion on June 19, 2007, long after the close of discovery, to request leave to amend his complaint.  (Doc. No. 116, at 3; Pl.'s Br. in Opp'n. 3.)

The liberality of Rule 15(a) allows for "misunderstandings and good-faith lapses in judgment, so long as the party thereafter acts reasonably and diligently." Arthur v. Maersk, Inc., 434 F.3d 196, 206 (3d Cir. 2006) (citing Adams v. Gould,, Inc., 39 F.2d at 868-69).  However, in the absence of oversight or excusable neglect, leave to amend may be denied.  6 Charles Alan Wright et al., Federal Practice and Procedure § 1488 (2d ed. 1990).  As Magistrate Judge Smyser observed, Plaintiff was "on notice" for almost three and one-half years before requesting leave to amend his complaint.  (Doc. No. 128, at 10.)  To date, Plaintiff has offered no explanation whatsoever for this undue delay.  For the foregoing reasons, as well as those set forth in the Report and Recommendation, the Court will overrule Plaintiff's objections and grant Whitetail's motion for summary judgment.

  **B. Defendants' First Motion for Summary Judgment (Doc. No. 95)**

With respect to Defendants' first motion for summary judgment, Magistrate Judge Smyser found that, because the Plaintiff undisputedly assumed the risk of injury, Defendants did

not owe Plaintiff a duty of care. (Doc. No. 128, at 18.) The Court agrees, adding only that Plaintiff's minority, an issue which has sounded throughout, would have no bearing upon the assumption of risk analysis undertaken therein.[5] (Id., at 14-18.)

Under Pennsylvania law, "the standard applied to a minor who allegedly assumes the risk of incurring injury . . . is a subjective one, concerning only what a particular minor plaintiff knows, sees, hears, comprehends and appreciates." Berman v. Philadelphia Bd. of Educ., 456 A.2d 545, 550 (Pa. Super. Ct. 1983). Thus, regardless of a minor's age, each case must be decided on its particular set of facts, "the critical factor being the [minor]'s ability vel non to recognize a given risk." Bruhn v. L.B. Smith, Inc., No. 3525 Civil 1991, 1993 WL 764630 (Pa. Ct. Com. Pl. July 7, 1993). The evidence in this case conclusively establishes that Plaintiff did indeed possess such ability, if not in exceptional measure. To quote Magistrate Judge Smyser:

> At the time of the accident, the plaintiff was an expert skier, a member of the United States Ski Association, and had been racing competitively since the mid-1990s. At the time of the accident, the plaintiff knew that skiing involved many risks and dangers, including changing weather conditions, variations in steepness and terrain, and natural and man-made obstacles and collisions with such obstacles. The plaintiff understood that a recreational skier could be injured while skiing. In addition, the plaintiff considered competition skiing more hazardous than recreational skiing. At the time of the accident, the plaintiff, who always wore a helmet while skiing, understood that injuries of all types, including severe injury and death, are a common

---

[5] In his memorandum, Plaintiff makes much to-do about an allegedly similar case involving Whitetail Ski Company, Inc. (Doc. No. 132, at 9-10; Pl.'s Mem. 7-8.) The opinion in that case, Plaster v. Whitetail Ski Company, Inc., No. 1:98-cv-00042 (M.D. Pa. 1998), is unpublished. Because Plaintiff neglected to attach a copy of the opinion to his memorandum or otherwise provide a copy of the opinion to the Court, any references thereto have been disregarded pursuant to Local Rule 7.8, which provides inter alia that "[a] copy of any unpublished opinion which is cited must accompany the brief as an attachment." Furthermore, even if the Plaintiff had complied with said rule, the opinion would not be binding upon the Court.

and ordinary occurrence of skiing.

(Doc. No. 128, at 11-12.)

The Court will therefore adopt Magistrate Judge Smyser's reasoning and grant summary judgment in favor of the Defendants.

### C. Remaining Motions for Summary Judgment (Doc. Nos. 92, 102)

Having previously determined that Defendants are entitled to summary judgment, Magistrate Judge Smyser recommended that both Defendants' second motion for summary judgment and Third-Party Defendant's motion for summary judgment be denied as moot. (Doc. No. 128, at 18-19.) Third-Party Defendant asserts that "the mootness doctrine does not apply" and so objects to the recommendation that his motion be denied. (Doc. No. 130, at 2; Third-Party Def.'s Obj. 2.) More particularly, Third-Party Defendant argues that the "Assumption of Risk and Release of Liability" agreement ("Release") indemnifying Defendant U.S. Ski & Snowboard Association ("USSA")

> calls not only for indemnification for USSA's liability to the Plaintiff but also purports to create a duty of the parent to defend the USSA. Therefore, despite the fact that there can by no claim for liability indemnification if those portions of the Report and Recommendation disposing of Plaintiff's claims for liability are adopted by the Court, there still remains the USSA claim that the Third Party Defendant must indemnify it for some or all of the costs of its defense of this action. 'Simply stated, a case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome.' Since there remains a 'live issue,' and the parties continue to have a legally cognizable interest in the outcome, the mootness doctrine does not apply.

(Doc. No. 131, at 1-2; Third-Party Def.'s Br.1-2) (citation omitted).

Such arguments are misplaced. Federal Rule of Civil Procedure 14(a) authorizes a defendant to bring into a suit any person "not a party to the action who is or may be liable to the

9

third-party plaintiff for all or part of the plaintiff's claim against the third-party plaintiff."  Fed. R. Civ. P. 14(a).  A defendant "attempting to transfer to the Third-Party Defendant the liability asserted against him by the original plaintiff" is thus the essential criterion of a third-party claim. Hanhauser v. United States, 85 F.R.D. 89, 90-91 (D. Ct. Pa. 1979) (citation omitted). Correlatively, a defendant's claim against a third-party defendant "cannot simply be an independent or related claim but must be based upon the [original p]laintiff's claim against the [d]efendant."  Id. at 90; see also Stiber v. United States, 60 F.R.D. 668, 670 (E.D. Pa. 1973) ("Under Rule 14, the liability of the third-party must be dependent on the outcome of the main claim.").  The foregoing is, of course, an apt description of USSA's third-party claim.

Underlying Rule 14 is a desire "to promote economy by avoiding the situation where a defendant has been adjudicated liable and then must bring a totally new action against a third party who may be liable to him for all or part of the original plaintiff's claim against him." Toberman v. Copas, 800 F.Supp. 1239, 1241 (M.D. Pa. 1992) (citing 6 Charles Alan Wright et al., Federal Practice and Procedure § 1441 at 289-90 (2d ed. 1990)).  Accordingly, it is the rare exception when a court renders judgment in favor of the defendant but nonetheless chooses to address a third-party claim or related motion.  See, e.g., Berrier v. Simplicity Corp., 413 F. Supp. 2d 431, 451 (E.D. Pa. 2005) (acknowledging that the dismissal of plaintiffs' claim mooted the contribution claim against third-party defendants but choosing to resolve third-party defendants' motion for summary judgment where defendants did not argue for dismissal based upon principles of mootness).  The vast majority of courts, having found the defendant not liable, will simply dismiss the third-party claim and any related proceedings as moot.  See, e.g., Lobianco v. Eckerd Corp., No. 03-145, 2004 WL 3009005 (E.D. Pa. Dec. 29, 2004) (claim dismissed as

moot); Karlsson v. F.D.I.C., No. 95-3266, 1996 WL 37830 (E.D. Pa. Jan. 29, 1996) (same); Davis v. Budd Co., No. 94-3023, 1995 WL 766015 (E.D. Pa. Dec. 26, 1995) (motions dismissed as moot); Sitkoff v. BMW of N. Am., No. 93-3804, 1995 WL 420033 (E.D. Pa. July 14, 1995) (claims, crossclaims, counterclaims, and motions dismissed as moot). Third-Party Defendant's motion falls squarely into this second line of cases. Ultimately, a court has the discretion to dismiss a third-party claim after the original claims of the plaintiff have been settled, and relegate the third-party plaintiff to a separate suit. Propps v. Weihe, Black & Jeffries, 582 F.2d 1354 (4th Cir. 1978). Because Defendants are entitled to summary judgment, Third-Party Defendant's objections will be overruled and his motion for summary judgment will be denied as moot.

## IV. CONCLUSION

For the foregoing reasons, the Court will overrule the objections of Plaintiff and Third-Party Defendant and adopt Magistrate Judge Smyser's Report and Recommendation. Accordingly, Defendants Whitetail Resort and Whitetail Ski Company, Inc.'s motion for summary judgment and Defendants' first motion for summary judgment will be granted and Third-Party Defendant's motion for summary judgment and Defendants' second motion for summary judgment will be denied as moot. An appropriate order follows.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **ANDERS ELLIS BJORGUNG,** : | |
| : | **Civil Action No. 1:03-CV-2114** |
| **Plaintiff** : | |
| : | **(Chief Judge Kane)** |
| v. : | |
| : | |
| **WHITETAIL RESORT, WHITETAIL** : | |
| **SKI COMPANY, INC., U.S.** : | |
| **SKI & SNOWBOARD ASSOCIATION,** : | |
| : | |
| **Defendants,** : | |
| : | |
| v. : | |
| : | |
| **ANDERS BJORGUNG,** : | |
| : | |
| **Third-Party Defendant** : | |

## ORDER

**AND NOW**, on this 28th day of September, 2007, upon due consideration of the Court and for the reasons set forth in the accompanying memorandum, **IT IS HEREBY ORDERED** that:

1. Magistrate Judge Smyser's Report and Recommendation is **ADOPTED**.

2. Plaintiff's objections to Magistrate Judge Smyser's Report and Recommendation are **OVERRULED**.

3. Defendants Whitetail Resort and Whitetail Ski Company, Inc.'s motion for summary judgment (Doc. No. 99) is **GRANTED**.

4. Plaintiff's request to amend his complaint is **DENIED**.

5. Defendants' first motion for summary judgment (Doc. No. 95) is **GRANTED**.

6. Third-Party Defendant's motion for summary judgment (Doc. No. 92) is **DENIED** as moot.

7.  Defendants' second motion for summary judgment (Doc. No. 102) is **DENIED** as moot.

                                                   s/ Yvette Kane
                                                 Yvette Kane, Chief Judge
                                                 United States District Court
                                                 Middle District of Pennsylvania